UNITED STATES, Appellee,

v.

Radhame TRONCOSO, Defendant,
Appellant.

No. 93–2130.

United States Court of Appeals,
First Circuit.

Heard May 2, 1994.

Decided May 18, 1994.

Gordon R. Blakeney, Jr., Concord, NH, by Appointment of the Court, for appellant.

Jean B. Weld, Asst. U.S. Atty., with whom Paul M. Gagnon, U.S. Atty., Concord, NH, was on brief for appellee.

Before SELYA and BOUDIN, Circuit Judges, and CARTER,* District Judge.

GENE CARTER, Chief District Judge.

Radhame Troncoso appeals his conviction and sentence for illegal reentry into the United States after having been deported subsequent to conviction for an aggravated felony, 8 U.S.C. § 1326(b)(2). We affirm.

## I. FACTUAL BACKGROUND

Appellant, Radhame Troncoso, from the Dominican Republic, has been convicted several times of drug trafficking and other related offenses in the United States. The conviction most relevant to this appeal took place on January 25, 1988, when Appellant was convicted in a Massachusetts state court on charges including possession of cocaine with intent to distribute. Appellant served his prison sentence and was then turned over to officials of the Immigration and Naturalization Service ("I.N.S.") who deported him on several grounds, including conviction of a drug trafficking offense. The deportation occurred on October 26, 1988. At that time, the I.N.S. warned Appellant that if he returned to the U.S. within five years, he would be guilty of a felony and subject to up to two years in prison as provided for by section 1326, before that section was amended by the

Anti–Drug Abuse Act of 1988. 8 U.S.C. § 1326.[1]

Appellant did return undetected to the United States at some point and was convicted in New York on August 29, 1991, on drug-related charges but was not deported following his incarceration.[2] He was later arrested in New Hampshire on October 30, 1992, convicted of selling cocaine, and received a suspended sentence in April of 1993. He was also charged with violating section 1326(b)(2) based on his earlier deportation in connection with the January 25, 1988, conviction. Section 1326(b)(2), which had been amended since Appellant's conviction and deportation, enhanced the maximum penalty for unlawful reentry from two to fifteen years for aliens who had been deported subsequent to conviction for committing an aggravated felony. See 8 U.S.C. § 1326(b)(2) (Supp.1993). On August 30, 1993, Appellant was convicted and sentenced to 60 months in prison.

## II. DISCUSSION

Appellant challenges the district court's denial of his motion to dismiss the indictment, arguing that Congress did not intend for section 1326(b)(2), as amended by the Anti–Drug Abuse Act of 1988, to apply retroactively to persons who were convicted and deported prior to the Act's effective date. 8 U.S.C. § 1326(b)(2). Appellant argues, in the alternative, that applying section 1326(b)(2) retroactively to his case violates the *ex post facto* Clause of the United States Constitution. U.S. Const. art. I, § 9, cl. 3. He also argues that the doctrines of equitable estoppel and estoppel by entrapment bar the court, as a matter of law, from sentencing him beyond a two-year term of imprisonment in light of the representations made by I.N.S. agents at the time of his deportation. Last-

---

* Of the District of Maine, sitting by designation.

**1.** Prior to the enactment of the Anti–Drug Abuse Act of 1988 ("ADAA"), section 1326 provided for a *maximum two-year* term of imprisonment for any alien who had been previously arrested and deported and was thereafter convicted of reentry, attempted reentry, or being found in the United States without permission. 8 U.S.C. § 1326 (1987). When the ADAA was enacted on November 18, 1988, section 1326 was amended to provide for a *maximum fifteen-year* term of impris-

onment for any alien who was convicted of reentry, attempted reentry, or being found in the U.S. after having been previously arrested and deported subsequent to a conviction for commission of an aggravated felony. 8 U.S.C. § 1326(b)(2) (Supp.1993).

**2.** The Government argues that Appellant was not deported following the New York conviction because he used an alias which prevented I.N.S. agents from identifying him.

ly, he argues that the district court erred by treating his New Hampshire state conviction as a "prior sentence," rather than as part of the instant offense of violating section 1326(b)(2), pursuant to section 4A1.2(a)(1) of the Sentencing Guidelines. U.S.S.G. § 4A1.2(a)(1).

### A. Statutory Construction

Appellant's first argument focuses on Congressional intent with respect to the retroactive application of section 1326(b). 8 U.S.C. § 1326(b).[3] Section 1326(b) was added to the Immigration and Nationality Act ("INA") on November 18, 1988, when Congress enacted the Anti–Drug Abuse Act of 1988 ("ADAA"). *See* Pub.L. 100–690, Title VII, Subtitle J, § 7345(a), 102 Stat. 4471 (codified as amended at 8 U.S.C. § 1326(b)(1988)). Apart from the statutory text, the Act provided that the amendment adding section 1326(b) "shall apply to any alien who enters, attempts to enter, or is found in, the United States on or after the date of the enactment of this Act." The ADAA also added a provision to the INA defining the new term of "aggravated felony" to include murder, illicit trafficking in any controlled substance, money laundering, and crimes of violence carrying at least 5 years of imprisonment. *See* Pub.L. 100–690, Title VII, Subtitle J, § 7342, 102 Stat. 4469 (codified as amended at 8 U.S.C. § 1101(a)(43) (1988)). The Act did not include a section limiting the temporal applicability of the "aggravated felony" definition.

■ The parties do not dispute that Appellant's drug conviction, which precipitated his deportation on October 26, 1988, falls into the definition of "aggravated felony" in section 1101(a)(43). 8 U.S.C. § 1101(a)(43). The issue in dispute is whether Congress intended for section 1326(b)(2), as it incorporates section 1101(a)(43), to apply retroactively to an alien who was convicted and deported prior to the ADAA amendments. In *Matter of A–A–,* Interim Dec. 3176 (BIA 1992), the Board of Immigration Appeals interpreted the plain language of the amended provisions, along with the applicability section accompanying section 1326(b), and concluded that the enhanced fifteen-year criminal penalty is:

> applicable to 'any alien who enters, attempts to enter or is found in, the United States on or after the date of enactment of [the November 18, 1988] Act.' ... For an alien reentering the United States on November 18, 1988, to be subject to these criminal penalties, the alien would need to have suffered a conviction and deportation before November 18, 1988. It would be virtually impossible for an alien convicted of an aggravated felony to reenter or be found in the United States on the date of enactment unless the definition of aggravated felony included convictions occurring before that date.

This Court adopted the BIA's reasoning in *Barreiro v. I.N.S.,* 989 F.2d 62 (1st Cir.1993) (upholding the retroactive application of the aggravated felony definition as it was incorporated into a "waiver of deportation" provision, serving to bar a seven-year domiciliate from seeking a waiver from deportation pursuant to section 212(c) of the INA, 8 U.S.C. § 1182(c) (Supp.1992)). In a case very similar to the facts at hand, *U.S. v. Forbes,* 16 F.3d 1294 (1st Cir.1994), this Court upheld a conviction under section 1326(b)(2) based on aggravated felony convictions that occurred prior to the effective date of the ADAA amendments. In oral argument, Appellant was unable to point to any case law in support of his position that section 1326(b)(2) was not intended to be applied retroactively. Given the law of this circuit and the plain meaning of the provision, we affirm the district court's application of section 1326(b)(2) to Appellant's conviction.

---

**3.** Section 1326 provides in pertinent part that:
(a) Subject to subsection (b), any alien who—
(1) has been arrested and deported or excluded and deported, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States ...
shall be fined under Title 18, United States Code, or imprisoned not more than 2 years or both.

(b) Notwithstanding subsection (a), in the case of any alien described in such subsection—

.        .        .        .        .

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 15 years, or both.
8 U.S.C. § 1326 (Supp.1993).

## B. Alleged Ex Post Facto Violation

■ Appellant argues that even if Congress intended for section 1326(b)(2) to be applied retroactively, the effect of retroactive application in his situation results in a violation of the *ex post facto* provision of the Constitution. *See* U.S. Const. art. I, § 9, cl. 3 (barring the retrospective application of laws that materially disadvantage a defendant). Appellant argues that the Government failed to present evidence ruling out the possibility that he returned to the United States subsequent to his October, 1988, deportation but prior to November 18, 1988, when the ADAA amendments went into effect. He argues that an *ex post facto* violation has occurred with respect to him and the class of convicted-and-deported aliens who were in the country on the date of enactment because "such a person's status is changed, and liability thus increased, by an *act, of the legislature,* of which such persons had no notice, nor opportunity to avoid, even given such notice." Appellant's Brief at 27.

In *Forbes,* this Court held that the inclusion of a defendant's prior drug convictions to trigger the enhanced criminal penalties of section 1326(b)(2) did not violate the *ex post facto* Clause, where the convictions had been obtained prior to the ADAA amendments. *Forbes,* 16 F.3d at 1301–02. Citing *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948), this Court reasoned that the enhanced fifteen-year penalty applies to the crime of unlawful reentry and does not increase the punishment for crimes committed prior to the ADAA amendments. *Id.* at 1302. Appellant distinguishes his situation by pointing out that the appellant in *Forbes* committed the offense of unlawful reentry *after* the amended section went into effect, whereas Appellant may have committed the offense of unlawful reentry prior to the ADAA amendments. But section 1326(a)(2) defines the criminal conduct more expansively to include entry, attempted reentry, or *being found in* the United States without permission. Appellant was indicted and convicted of "being found in the United States" in violation of section 1326(b)(2). His offense occurred on October 30, 1992, well after the ADAA amendments and not on the date of

his undetected reentry. Hence, Appellant fails to satisfy a critical element for establishing that a criminal law has *ex post facto* effect; he fails to demonstrate that the law is "retrospective, that is, it must apply to events occurring before its enactment." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981); *see also U.S. v. Alvarez–Quintero,* 788 F.Supp. 132 (D.R.I. 1992) (finding no · *ex post facto* violation where court applied an amended Sentencing Guideline increasing the penalty for reentry of an alien deported for an aggravated felony, even when reentry predated the amended Guideline, because the section 1326(b)(2) offense occurred on the date the alien was found in the United States and not on the date of the unlawful reentry).

## C. Sentencing: Entrapment by Estoppel and Equitable Estoppel

■ Appellant argues that the court should be estopped from sentencing him beyond two years based on representations made to him by the I.N.S. upon his deportation, indicating that unlawful reentry could subject him to a maximum two-year prison term. The Court need not discuss this argument in detail because Appellant fails to satisfy threshold elements of the two estoppel doctrines. First, with respect to "entrapment by estoppel," Appellant cannot show that a government official erroneously advised him that the particular act for which he was convicted was actually legal at the time it was committed. *United States v. Smith,* 940 F.2d 710, 714 (1st Cir.1991). Second, with respect to equitable estoppel, Appellant cannot show that he relied upon a material misrepresentation, because the I.N.S. informed Appellant that he would face up to two years for unlawful reentry which was an accurate rendition of the law as it existed on the date of Appellant's deportation. *See Heckler v. Community Health Services, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984); *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 912 (1st Cir.1989) (defining elements of equitable estoppel to include a material misrepresentation of a party who had reason to know of its falsity and reasonable reliance upon the misrepresentation to the charging party's disadvan-

tage). Further, this Court has recently held that even where the I.N.S. erroneously informed a deportee of the penalty faced upon reentry, such an error is not a mitigating factor justifying a downward departure under the Sentencing Guidelines. *U.S. v. Smith*, 14 F.3d 662 (1st Cir.1944) (holding that, even where defendant was misinformed as to the consequences of unlawful reentry and stated that he returned in reliance on the misrepresentation, such a circumstance did not justify a downward departure *where defendant made a purposeful decision to engage in felonious conduct*). Hence, Appellant's arguments regarding the two estoppel doctrines are unavailing.

### D. Sentencing: Alleged Error in Computing Criminal History

■ Appellant argues that the district court erred in determining that his New Hampshire conviction for selling cocaine on October 30, 1992, was a "prior sentence" resulting in an additional two points being added to his criminal history computation pursuant to section 4A1.2(a)(1) of the Sentencing Guidelines. U.S.S.G. § 4A1.2(a)(1).[4] Appellant argues that his conduct in violation of section 1326(b)(2) came to light only through his arrest for selling cocaine. Since "he was found in this country in the process of committing that [state] offense", Appellant argues that the offense conduct of selling cocaine should be viewed as part of the instant offense and not counted as a prior sentence. *See* Trial Transcript (Aug. 30, 1993) at 29–30.

The commentary to section 4A1.2 defines "prior sentence" as "a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense." U.S.S.G. § 4A1.2, comment. (n.1). Here, Appellant's state court sentence was imposed in April of 1993, prior to his August 30, 1993, sentencing on the instant offense. Whether his conduct in selling cocaine qualifies as conduct that was part of the instant offense presents an issue of first impression in this circuit. Other circuit courts of appeal that have considered the issue have decided the appropriate inquiry is whether the "prior sentence" and the instant offense involve conduct that is severable into two distinct offenses. *See, e.g., U.S. v. Beddow*, 957 F.2d 1330, 1338–39 (6th Cir.1992) (holding that defendant's state conviction for carrying a concealed weapon was not part of the instant federal money laundering offense, even though the concealed weapon was found at the time of defendant's arrest for attempting to carry out money laundering scheme); *U.S. v. Banashefski*, 928 F.2d 349 (10th Cir. 1991) (holding that defendant's state court conviction for possessing a stolen car was severable from federal offense of being a felon in possession of a firearm, even though firearm was found in car's trunk at time of defendant's arrest for state stolen vehicle charge).

Whether or not the "prior sentence" and the instant offense are severable entails a fact-specific inquiry by the district court. To the extent that factual issues are involved, the district court's determinations are reviewed under the clearly erroneous standard, and "due deference" is afforded to the "application of the guidelines to the facts." 18 U.S.C. § 3742(e). Here, the district court based its findings on the Government's arguments that the only relation between Appellant's drug selling conduct and his conduct in violating section 1326(b)(2) is that the former violation set in motion a chain of events whereby federal agents were able to trace Appellant's fingerprints to those of Radhame Troncoso and the I.N.S. then retrieved his file, which led to the determination that Appellant was in the country in violation of 1326(b)(2). Trial Transcript at 30–31. The

---

4. Appellant's counsel, in oral argument, acknowledged that his brief to this Court wrongly used the term "related cases," referred to in section 4A1.2(a)(2) of the Sentencing Guidelines, to refer to the relationship between Appellant's prior New Hampshire sentence and the instant offense of violating section 1326(b)(2). 8 U.S.C. § 1326(b)(2). Counsel acknowledged that "related cases," as used in the Guidelines, refers to the relationship between prior sentences and whether prior sentences should be counted as one sentence in a defendant's criminal history and does not govern a court's assessment of whether a prior sentence should be viewed as part of the instant offense. *See also U.S. v. Beddow*, 957 F.2d 1330, 1337 (6th Cir.1992); *U.S. v. Walling*, 936 F.2d 469, 471 (10th Cir.1991).

Government argued there was no other connection between the conduct involved in the drug offense and the 1326(b)(2) violation especially where the state prosecutor and the United States Attorney had to prove totally different elements with respect to each offense. *Id.* Based on these arguments, the district court's determination that Appellant's sentence for selling cocaine constituted a severable offense, and a "prior sentence" for the purpose of computing Appellant's criminal history category, is not erroneous.

The judgment of the district court is *AF-FIRMED.*