USCA1 Opinion

 

 October 20, 1994 [NOT FOR PUBLICATION] UNITED STATES COUSRT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2256 UNITED STATES, Appellee, v. WILFIN ODALIS VIDAL-MEJIA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, and ____________________ Boudin, Circuit Judge. _____________ ____________________ James B. Krasnoo on brief for appellant. ________________ Donald K. Stern, United States Attorney, and James F. Lang, _________________ ______________ Assistant United States Attorney, on brief for appellee. ____________________ ____________________ Per Curiam. Appellant, Wilfin Odalis Vidal-Mejia, ___________ appeals from his conviction and sentence. His court- appointed counsel has filed a brief in conformance with Anders v. California, 386 U.S. 738 (1976). Vidal-Mejia was ______ __________ informed by counsel of his right to submit a supplemental pro se brief, but has not done so. We affirm. Background __________ In April, 1993, Vidal-Mejia was charged in a one-count indictment with illegal reentry after deportation in violation of 8 U.S.C. 1326(a) and (b)(2). Specifically, the indictment charged that after having been previously arrested and deported following a conviction for commission of an aggravated felony, Vidal-Mejia was found in the United States on or about March 7, 1993, without having received the permission of the Attorney General to reapply for admission. Vidal-Mejia initially pleaded not guilty but changed his plea to guilty at a hearing before the district court on July 6, 1993. Although there was no written plea agreement, the government informed the court that it had agreed to recommend a three-level reduction in the offense level for acceptance of responsibility. A presentence report ("PSR") was prepared, computing a total offense level of 21 and a criminal history category of III. The base offense level of 8 was increased by 16 levels because Vidal-Mejia had been deported follwing conviction of an aggravated felony. There was a three-level reduction for acceptance of responsibility. The resulting guideline imprisonment range was 46 to 57 months. Vidal-Mejia moved for a downward departure from the guidelines, arguing that his sentence should not exceed two years. One of the grounds for his motion was that the government was estopped from imposing a sentence in excess of two years because an INS notice given to him at the time of his deportation stated that illegal reentry was penalized by a maximum of two years' imprisonment. In fact, at the time of appellant's deportation, 8 U.S.C. 1326(b)(2) provided for a maximum sentence of fifteen years for illegal reentry by an alien deported following conviction of an aggravated felony. The district court denied the motion and sentenced Vidal-Mejia at the low end of the guideline range, to 46 months' imprisonment. Vidal-Mejia appeals from that sentence and his conviction. Discussion __________ Counsel for appellant identifies the following issues that might arguably support an appeal: 1) the district court mistakenly believed that it lacked the authority to depart from the guidelines on the ground of the erroneous INS notice; 2) the government is estopped from imposing a sentence in exess of two years; 3) a sentence in excess of two years violates the Due Process Clause of the Fifth -3- Amendment to the Constitution; and 4) the district court failed to comply with Fed. R. Crim. P. 11 in accepting appellant's guilty plea. We agree with the government that none of these arguments has merit. 1) Failure to Depart. In denying appellant's motion for _________________ a downward departure on the basis of the erroneous INS notice, the district court concluded that "deterrence necessitates a more severe sentence than that to which the defendant asked me to depart," and that "I have no basis for departure in the law." We conclude from this record that the district court determined that it lacked the legal authority to consider a departure on the basis of the INS notice. We therefore have jurisdiction to review, de novo, the correctness of that determination. See United States v. ___ ______________ Smith, 14 F.3d 662, 666 (1st Cir. 1994). We addressed the _____ identical question in Smith and concluded that the erroneous _____ INS notice "does not present the kind of circumstance a sentencing court should consider to support a downward departure." Id. at 666. Therefore, the district court's ___ denial of Vidal-Mejia's motion for a departure on that basis was entirely proper. 2) Estoppel. Appellant argues that the doctrines of ________ entrapment by estoppel and equitable estoppel bar the imposition of a sentence in excess of two years. The "entrapment by estoppel" argument is foreclosed by our -4- decision in United States v. Troncoso, 23 F.3d 612, 615 (1st _____________ ________ Cir. 1994) (rejecting "entrapment by estoppel" argument under almost identical circumstances because "[a]ppellant cannot show that a government official erroneously advised him the particular act for which he was convicted was actually legal at the time that it was committed"). In United States v. Troncoso, supra, we also rejected an _____________ ________ _____ equitable estoppel argument, but on the ground that there was no material misrepresentation. In that case, unlike this one, the two-year maximum contained in the INS notice was an accurate rendition of the law as it existed at the time of appellant's deportation. We cited our holding in Smith, _____ however, to suggest that even had appellant been misinformed of the consequences of unlawful reentry and purportedly relied thereon in deciding to return, "[t]he sentencing court cannot countenance Smith's purposeful decision to engage in felonious conduct, and grant him the benefit of a downward departure, because Smith understood the penalty he would face to be relatively minor." Smith, 14 F.3d at 666. See also _____ ___ ____ Troncoso, 23 F.3d at 616. ________ In United States v. Perez-Torres, 15 F.3d 403 (5th Cir. _____________ ____________ 1994), the Fifth Circuit refused to apply the doctrine of equitable estoppel under identical circumstances. Noting that "'he who comes into equity must come with clean hands,'" id. at 407 (quoting Precision Instrument Mfg. Co. v. ___ ________________________________ -5- Automotive M.M. Co., 324 U.S. 806 (1945)), the Fifth Circuit ___________________ concluded that the willful and knowing commission of a felony (illegal reentry) cannot constitute the reasonable reliance required by the equitable estoppel doctrine. Perez-Torres, 15 ____________ F.3d at 407. See also Akbarin v. Immigration and ___ ____ _______ ________________ Naturalization Service, 669 F.2d 839, 844 (1st Cir. 1982) _______________________ (noting that a "petitioner's unclean hands . . . may preclude him from asserting estoppel against the Government"). We agree with the Fifth Circuit and conclude that because appellant cannot show "reasonable reliance," his equitable estoppel argument is without merit. 3) Due Process. This court has not previously addressed ___________ the argument that the imposition of a penalty in excess of the two year maximum contained in the INS notice violates due process. In rejecting this argument, however, we follow the approach of all the circuits that have addressed it. See ___ United States v. Samaniego-Rodriguez, Nos. 93-3015 and 93- _____________ ___________________ 4035, 1994 U.S. App. Lexis 20311 at *5 (7th Cir. Aug. 4, 1994); United States v. Meraz-Valeta, 26 F.3d 992, 996 (10th _____________ ____________ Cir. 1994); United States v. Ullyses-Salazar, 28 F.3d 932, _____________ _______________ 936 (9th Cir. 1994); Perez-Torres, 15 F.3d at 406. We agree ____________ with the following reasoning of the Fifth Circuit: As [appellant] concedes, section 1326 clearly and unambiguously articulated the penalties associated with a reentry offense. Thus, regardless of the inaccuracy of Form I-294, the statute under which _______ Perez was convicted provided notice adequate to satisfy the requirements of due process. -6- Id. at 406 (emphasis in original). ___ 4) Rule ll. Appellant's final argument is that his _______ guilty plea should be vacated because the district court failed to comply with the mandates of Fed. R. Crim. P. 11. Specifically, he argues that the district court violated Rule 11 by failing adequately to explain and ensure that he understood that the maximum sentence he could receive was fifteen years and that he was pleading guilty to two separate charges contained in one indictment. At the change of plea hearing, appellant was represented by counsel and aided by an interpreter. At the district court's request, the government explained that the maximum term of imprisonment that appellant could receive was fifteen years. (The government also recited the maximum fine, supervised release and special assessment that could be imposed.) The court then asked appellant whether he understood that "that's the maximum penalty that can be imposed in this case?" The appellant answered "yes." Appellant's contention that the district court did not fulfill its obligation under Rule 11(c) to ensure that he understood the charges against him is belied by the record. Rule 11 "requires the court both to inform the defendant of the nature of the charge and make a determination that he understands it." United States v. Allard, 926 F.2d 1237, 1244 _____________ ______ -7- (1st Cir. 1991). The district judge summarized the charge as follows: Now, before I can find you guilty of the offense, even on your plea, I have to be satisfied beyond a reasonable doubt that there is sufficient evidence from which the Government could prove you guilty of the offense of being an illegal alien illegally reentering the United States after having been deported. The Government has to prove that you knowingly and willfully reentered the United States without having received the express consent of the Attorney General, that it didn't happen by inadvertence or mistake, but that you really meant to be here knowing that you were a deported alien. At the court's request, the government then stated what its evidence would be if the case were to proceed to trial. The district court's description of the charge did not specify that 1326(b) enhances the penalty for deportation following conviction of an aggravated felony. The government, however, specifically outlined the previous convictions as part of the recitation of its proof at the hearing. This cured the omission. See Allard, 926 F.2d at ___ ______ 1246 (explanation of charge may come from the prosecutor in the court's presence). Moreover, in United States v. Forbes, _____________ ______ 16 F.3d 1294, we held that 1326(a) and 1326(b) do not describe separate criminal offenses with different elements and maximum penalties. Instead, we concluded that 1326 (b) should be construed as a sentence enhancement provision. Id. ___ at 1297-1300. Therefore, the alleged failure specifically to inform appellant of the prior aggravated felony aspect of 1326(b) did not violate Rule 11 where the court ensured that -8- appellant understood that the maximum penalty was fifteen years. Appellant's brief indicates that counsel conducted the requisite review and analysis of the case. See Anders, 386 ___ ______ U.S. at 744. Having carefully reviewed the record in accordance with our obligation under Anders, we agree that ______ the appeal is indeed without merit. The conviction and sentence are summarily affirmed pursuant to Loc. R. 27.1. ________ -9-